UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DERELL PRUITT, on behalf of himself and others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> QUALITY LABOR SERVICES, LLC and HIGHLAND BAKING CO., INC., <br><br> Defendants. | No. 16 C 09718 <br><br> Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

In March 2016, Derell Pruitt filed a Chapter 7 bankruptcy petition. In the petition's list of assets, Pruitt did not disclose seven pending EEOC employment discrimination charges. One of those charges eventually became this employment discrimination lawsuit.[1] Defendants Quality Labor Services and Highland Baking Company now argue that, under the doctrine of judicial estoppel, Pruitt's failure to disclose that EEOC charge prevents him from pursuing the claims in this case. The parties both moved for summary judgment on the judicial-estoppel defense. R. 100, Def's. Mot. Summ. J.; R. 107, Pl.'s Mot. Summ. J.[2] But the Court denied both motions, reasoning that there was a genuine dispute about a material fact, namely, whether

---

[1]This Court has subject matter jurisdiction over this employment-discrimination case under 28 U.S.C. § 1331.

[2]Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

Pruitt's omission of his EEOC charge was *intentional. See* R. 115, Order. The Court held an evidentiary hearing on September 13 and 14, 2018. At the hearing, the witnesses were Pruitt; his bankruptcy attorney, Kenneth Borcia; and the bankruptcy trustee assigned to the Chapter 7 case, John Gierum. After considering all the evidence presented, the Court finds that the Defendants failed to prove by a preponderance of the evidence that Pruitt's omission "was an intentional effort to conceal an asset from [his] creditors." *Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542, 548 (7th Cir. 2014). So judicial estoppel does not apply.

## I. Legal Standard

The doctrine of judicial estoppel prevents litigants from manipulating the court system by adopting inconsistent positions in different cases or different phases of the same case. *Spaine*, 756 F.3d at 547. "By making litigants choose one position irrevocably, the doctrine of judicial estoppel raises the cost of lying." *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006) (cleaned up).[3] When a debtor conceals a contingent or unliquidated claim during bankruptcy and then seeks to profit from the claim, judicial estoppel might apply to bar the debtor from bringing the concealed claim. *Spaine*, 756 F.3d at 547. But the Seventh Circuit has held that only *intentional* concealment of a legal claim triggers judicial estoppel. *Id.* at 547-48. Thus, to win on the affirmative defense of judicial estoppel, a defendant must prove by a preponderance of the evidence that the plaintiff-debtor intentionally concealed the

---

[3]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

2

claim. *See Yi v. Sterling Collision Ctrs., Inc.*, 480 F.3d 505, 507 (7th Cir. 2007) (identifying a "presumption that the burden of proof in federal civil cases is proof by a preponderance of the evidence"); *Burdett v. Miller*, 957 F.2d 1375, 1382 (7th Cir. 1992) ("The normal standard of proof in a civil case is, of course, proof by a preponderance of the evidence.").

## II. Analysis

On March 16, 2015, Pruitt filed the EEOC charge that became this lawsuit. R. 137, 9/13 Tr. at 83:20-22; Pl. Exh. 1.[4] He also filed similar charges against other companies in both March and April 2015. 9/13 Tr. at 85:3-5, 14-17; Pl. Exhs. 2-7. In June and July 2015, he was interviewed by EEOC investigators about his charges. 9/13 Tr. at 32:8-23; Def. Exh. 44, Pruitt Dec. ¶ 9. Then, in July 2015 he began a full-time job as a caretaker for adults and children at the Riverside Foundation in Lincolnshire, Illinois. 9/13 Tr. at 26:12-25; Pruitt Dec. ¶ 10. A few months later, in November 2015, he agreed to be a named plaintiff in a collective action brought under the Fair Labor Standards Act (*Calderon*). Pl. Exh. 9, First Am. Compl, *Calderon, et al v. MVP*, No. 15-cv-9626 (N.D. Ill.); Pruitt Dec. ¶ 12.

The following year, in 2016, Pruitt retained attorney Kenneth Borcia to represent him in filing a Chapter 7 bankruptcy petition. Pruitt Dec. ¶ 3. The petition was ultimately filed on March 17, 2016. Pl. Exh. 10. On April 22, 2016, both Pruitt and Borcia attended a Meeting of the Creditors (commonly known as a "341 hearing")

---

[4]Plaintiff and Defense exhibits entered during the September 13 and 14, 2018 hearing are not appended to the transcripts, R. 137-38. An index listing all exhibits referenced in this Opinion can be found in R. 137 at 4. The Exhibit Lists submitted by the Plaintiff and Defendants in anticipation of the hearing are R. 117 and R. 119, respectively.

in Pruitt's bankruptcy case. 9/13 Tr. at 155:11-24; *see also* Pl. Exhs. 15-16. The meeting was conducted by the bankruptcy trustee assigned to Pruitt's case, John Gierum. 9/13 Tr. at 171:18-172:2; *see also* Pl. Exhs. 15-16. The next day, on April 23, Gierum filed a report of no distribution. 9/13 Tr. at 174:17-21; *see also* Pl. Exh. 17 at 3-4. Pruitt's debts were discharged on June 22, 2016. 9/13 Tr. at 54:5-9; *see also* Pl. Exh. 17 at 4. In the meantime, on May 9, 2016, Pruitt had filed a complaint in another case based on some of the EEOC charges he had filed in the spring of 2015. Pl. Exh. 18, Compl., *Pruitt, et al v. Personnel Staffing Group, et al*, No. 16-cv-05079 (N.D. Ill.). Then, after he received his bankruptcy discharge, he filed the complaint in this case on October 13, 2016. R. 1, Compl.

Broadly speaking, Pruitt's explanation for his failure to disclose the EEOC charge in his bankruptcy petition is this: Pruitt did not know that his EEOC charges were legal assets that had to be disclosed. He never told employment attorney Chris Williams, who filed the EEOC charges on his behalf and who continues to represent him in this lawsuit, about his decision to file for bankruptcy. 9/13 Tr. at 36:15-24; *see also* Pruitt Dec. ¶ 13 ("I did not tell my attorney in this matter, Mr. Williams, that I was filing bankruptcy because I did not think that the matters were connected."). As a result, Williams had no reason to advise Pruitt to disclose his potential claims. Also, Pruitt was aware neither that the EEOC charges might be converted into lawsuits nor that he could stand to gain from them financially. *See* 9/13 Tr. at 31:23-32:4 ("I didn't think nothing about money."). Instead, Pruitt testified, he simply filed the EEOC charges because he had become frustrated about the hurdles he was facing in

4

finding a job and he hoped filing the charges would help him get one. *Id.* ("At the time, I was just hoping I'd get a job.").

Pruitt testified that when he filed for bankruptcy, attorney Borcia did not ask Pruitt specifically whether he had any pending EEOC charges or was a party to any employment disputes. 9/13 Tr. at 36:25-37:3. Borcia also did not show or read to Pruitt the applicable questions in his bankruptcy schedules. 9/13 Tr. at 40:14-43:9; *see also* Pl. Exh. 10. Same with the Meeting of Creditors: Trustee Gierum did not ask Pruitt any questions about employment disputes. Pl. Exhs. 15-16; *see also* 9/13 Tr. at 173:23-25 ("Did you ask him during that meeting any specific questions about claims that he had? A: No."); 182:16-24. So, according to Pruitt, the bankruptcy proceeding moved along without him realizing that he should have listed the EEOC charges.

When Pruitt realized that he should have included the EEOC charges in his bankruptcy schedules—a realization prompted by the Defendants' motion for summary judgment in this case—he contacted Borcia's office to correct them. 9/13 Tr. at 55:6-21. Borcia then moved the bankruptcy court to reopen Pruitt's case. Pl. Exh. 23; *see also* 9/13 Tr. at 157:15-20. The bankruptcy court reopened the case, Pruitt amended his schedules, and Trustee Gierum determined that the charges and other claims were likely not worth enough to pursue on Pruitt's creditors' behalf. 9/13 Tr. at 175:23-176:3, 176:19-23 ("I believe the value … was rather small and it didn't give me a lot of confidence that it was a matter that was worth pursuing on behalf of the bankruptcy estate."); *id.* at 157:23-158:1.

On review of the record, Pruitt's story makes sense for several reasons. First, and most importantly, both he and bankruptcy attorney Borcia testified that they did not specifically discuss EEOC claims or *employment* disputes during their attorney-client meetings. 9/13 Tr. at 36:25-37:3, 142:23-143:6 ("I didn't ask him about the discrimination, but I did ask him about lawsuits."); *id.* at 143:12-13 ("Q. Did you read to him where it says employment claims? A. No, I did not say employment claims."); *id.* at 143:21-23 ("I did not ask him whether he had any kind of employment loss, okay?"); *id.* at 144:18-20 ("I believe I asked him accidents, insurance claims, right to sue. Employment disputes, you know, I don't remember if I asked him that."). Borcia testified (and Pruitt agreed) that they discussed lawsuits in general terms and that Pruitt disclosed an old landlord-tenant dispute. *Id.* at 145:3-8 ("There was a question on a counterclaim that he filed, and he filed a counterclaim."); *id.* at 148:23-149:14; *see also* R. 138, 9/14 Tr. at 206:13-16 (Pruitt acknowledging that Borcia asked about lawsuits generally); 9/13 Tr. at 121:11-22 ("I've never been involved with [an employment discrimination claim] before."); *id.* at 143:8-13 ("I was looking for accident cases, you know, things like that, and I did ask him whether he had any claims where he could bring a lawsuit."). It is clear, however, that employment disputes and EEOC claims never came up in their discussions.

It is also uncontroverted that Trustee Gierum never asked Pruitt about EEOC claims or unemployment disputes. The record contains both an audio recording and a transcript of the April 22, 2016 Meeting of Creditors in the Chapter 7 case. Pl. Exhs. 15-16. During the hearing, which lasted less than two minutes, Gierum never

6

mentioned employment disputes. Pl. Exhs. 15-16; *see also* 9/13 Tr. at 173:23-25 ("Q. … Did you ask him during that meeting any specific questions about claims that he had? A. No."); *id.* at 182:16-24.

Second, Pruitt's educational background supports his contention that he did not understand the nature of his EEOC charges or realize that they should be disclosed to the bankruptcy court. Pruitt got through only the eleventh grade in high school. 9/13 Tr. at 63:14-16. He did later complete his G.E.D., *id.* at 64:11-15, but he has never completed any college courses, and he has no legal education or training, *id.* at 26:1-6. Pruitt's work as a caregiver in a residential facility involves passing medication, housekeeping, cooking, assisting residents with bathing and showering, and taking residents on "community outings." *Id.* at 67:6-8. There is no reason to think that an individual with no college or legal training would intuitively understand the significance of an EEOC administrative charge. Pruitt simply did not know that his EEOC charges were "claims" or "administrative proceedings." *See* Pl. Exh. 10 at 12, 51. The Court credits his testimony to that effect.

The defense argues that Pruitt's retainer agreement with employment attorney Chris Williams should have tipped Pruitt off that Williams planned to eventually litigate the EEOC charges through a lawsuit. 9/13. Tr. at 105:2-107:4; *see also* Def. Exh. 36 at 1-4. Defendants also suggested that Attachment A to the retainer, a form called "Duties of Class Representatives," should have given Pruitt similar hints. 9/13 Tr. at 107:15-108:22; *see also* Def. Exh. 36 at 5. Those lines of cross-examination were not convincing. The retainer agreement bears all the hallmarks of

7

a standard form, written in dense legalese, and the agreement does not promise any recovery. *See* Def. Exh. 36. No evidence was presented suggesting Pruitt and Williams discussed whether or how much money Pruitt was likely to recover. Given the sparse evidence that Pruitt knew he could recover money from the EEOC charges (indeed, a monetary recovery might not ever come to fruition), it is not surprising that he did not intuit that the charge was an asset from which his creditors might be entitled to recover.

Third, Pruitt was believable on the stand. In a bench trial, the judge, as the finder of fact, must determine whether each witness is credible and weigh his testimony accordingly. *See Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1068 (7th Cir. 2013) ("In a bench trial or hearing without a jury, the district court judge acts as both gatekeeper and factfinder."). In his testimony, Pruitt admittedly acknowledged an instance in which he was untruthful in the past. 9/13 Tr. at 64:16-65:17 (conceding that he had provided his employer with a resume that inaccurately stated that he had graduated from high school).[5] During the hearing, however, Pruitt testified consistently about the most important facts in this case: why he filed the EEOC charges in the first place, why the charges never came to mind when he signed the bankruptcy petition, and that he would have disclosed them if he had known he

---

[5]Pruitt also testified that he was convicted in 2007 of fraudulent misuse of a credit card. He initially contested introduction of the conviction under Federal Rule of Evidence 609(b). R. 124, Pl. Mot. in Limine to Exclude; R. 129, Def. Resp. Mot. in Limine to Exclude; *see also* 9/13 Tr. at 59:2-61:14. The Court decided to allow the conviction into evidence because the additional risk of unfair prejudice to Pruitt in the bench trial context was virtually nonexistent. 9/13 Tr. at 13:11-23. Ultimately, because the conviction happened so long ago, the Court did not find it particularly probative of Pruitt's character for truthfulness.

had to. *See, e.g.*, 9/13 Tr. at 31:23-32:4, 86:8-11, 107:5-9, (Pruitt testifying that he filed the EEOC charges because he was trying to get a job); *id.* at 36:25-37:6 (Pruitt testifying that Borcia never asked him specifically about EEOC charges or employment disputes); *id.* at 84:13-21 (Pruitt testifying that he did not know what the EEOC charges were or that he was required to disclose them in a previous bankruptcy petition). His witness-stand demeanor was calm and forthright, and he appeared to answer each question to the best of his ability.

Fourth, the Defendants failed to establish that Pruitt had any genuine motive to conceal the EEOC claims from his creditors. Pruitt testified that he was not aware that one of his EEOC charges would result in this lawsuit and he also testified that he did not believe he stood to recover much financially. 9/13 Tr. at 31:23-32:4 ("At the time, I was just hoping I'd get a job. … I didn't think nothing about money."). His subjective understanding of the value of this lawsuit was corroborated by Gierum's testimony that he chose not to pursue these claims (after Pruitt reopened his bankruptcy case) precisely because they would not be worth much. 9/13 Tr. at 176:20-23. There was simply no reason for Pruitt to believe that he was going to reap a treasure from the EEOC charges, so he had no serious motivation to hide anything from his creditors.

At the hearing, the Defendants raised a few other arguments worth discussing. First, when Pruitt signed the bankruptcy petition and schedules, he affirmed under penalty of perjury that he had reviewed his bankruptcy schedules and that the information in them was correct. *See* Pl. Exhs. 11-13; *see also* 9/14 Tr. at 210:17-

9

212:25; *id.* at 237:13-16. At the hearing, Pruitt acknowledged that he did not read every page of his bankruptcy petition. Instead, he relied on Borcia's expertise and experience, and assumed that the information in the petition was correct based on the conversations that he and Borcia had about his financial affairs. 9/14 Tr. at 221:20-25 ("I pretty much went off what Borcia was telling me was in the documents."). In light of the 61-page length of the petition and schedules, Pruitt's approach to just rely on his attorney—although regrettable—is not surprising.

The parties also disagree about whether Borcia showed Pruitt the full bankruptcy petition before it was filed. 9/13 Tr. at 38:13-25 ("[D]id Mr. Borcia or anyone from his office show this document to you before it was filed on March 17, 2016? A. No."); 9/14 Tr. at 220:21-221:4; *contra* 9/13 Tr. at 150:24-151:21 (Borcia testifying that Pruitt reviewed the full petition before filing). But even if Pruitt saw the full petition before he signed it, he credibly explained why he did not fly-speck all 61 pages. No persuasive inference of intentional concealment arises from the averment that he had reviewed the bankruptcy petition and schedules.

Second, the Defendants argued that Pruitt's sole or primary motivation in reopening his bankruptcy case was to defeat their summary judgment motion and preserve his interest in this case. 9/14 Tr. at 230:17-20. To make their argument, the Defendants presented evidence that Pruitt reached out to Borcia's office only one time to arrange for the reopening of the case, and that employment attorney Williams was heavily involved in helping Borcia move to reopen and then amend the schedules. *See* 9/13 Tr. at 158:2-20, 160:1-8; 9/14 Tr. at 213:20-214:25. This argument does not hold

10

water. Of course Pruitt was motivated to reopen his bankruptcy proceeding at least in part because it would increase his chances of litigating the merits of his claim in this case. But it is also possible that he felt guilty about the mistake and wanted to clear it up, as his testimony suggests. 9/13 Tr. at 55:19-56:2 ("I realized it was a mistake and I needed to correct it."). Because Pruitt could have had mixed motives for reopening the bankruptcy case, Williams's involvement in the process does not make much difference.

Third, the Defendants argued that Pruitt's failure to disclose the *Calderon* lawsuit suggests that he intentionally hid this EEOC charge too. 9/14 Tr. at 232:10-14; *see also* First Am. Compl, *Calderon, et al v. MVP*, No. 15-cv-9626. The idea is that Pruitt should have been aware that he was required to disclose lawsuits in his bankruptcy petition, both because Borcia discussed lawsuits with him and because a lawsuit is more obviously an asset than an EEOC charge. Pruitt's failure to disclose his involvement in *Calderon* would thus suggest he was knowingly trying to hide his legal claims. *See* 9/13 Tr. at 110:25-113:3. But the Defendants failed to prove that Pruitt intentionally omitted even the *Calderon* lawsuit from his bankruptcy schedules. First, there was a lapse of around four months between November 2015, when Pruitt was added to the *Calderon* lawsuit, and March 17, 2016, when he filed his Chapter 7 petition. *See* Pl. Exhs. 9-10. He simply may have forgotten about the lawsuit during that time. Second, Pruitt credibly testified that he did not think he had much to gain financially from the *Calderon* lawsuit. 9/14 Tr. at 226:2-8 ("I didn't think he was suing. I thought he was going to obtain, to talk to them in regards to

11

getting me a check for me going out there for four hours and being sent back."). As a result, Pruitt's omission of the *Calderon* lawsuit from his schedules is not particularly illuminating.

Fourth, the Defendants point out that Pruitt also failed to disclose his EEOC charges in another bankruptcy petition he filed in April 2015, "approximately three weeks" after filing the EEOC charge against Quality Labor. 9/13 Tr. at 84:8-21; Def. Exh. 49. They argue that Pruitt could not possibly have forgotten about the EEOC charges in that short period of time and that he must have known he was concealing the charges from his creditors in that 2015 bankruptcy filing, so he must have intended to conceal the charges in his March 2016 petition as well. *See* 9/14 Tr. at 231:13-24. This argument is not convincing. Pruitt did not claim that he failed to disclose his EEOC petitions in the 2016 bankruptcy because he forgot about them— he claimed that he failed to disclose them because he did not realize they should be disclosed. *See* 9/13 Tr. at 36:25-37:6. Whether he had time to forget about the EEOC charges before either bankruptcy filing is irrelevant.

Finally, the Defendants elicited testimony from attorney Borcia that he met with Pruitt five or six times before finally filing his bankruptcy petition. *See, e.g.*, 9/13 Tr. at 129:16-17; *see also* 9/14 Tr. 233:20-234:3. That testimony directly contradicted Pruitt's testimony that he only visited Borcia's office twice and only met with Borcia once in that time frame. *See* 9/13 Tr. at 34:16-35:20, 188:6-12. It is true that the Defendants successfully impeached Pruitt on this point: he signed documents at Borcia's office on more than two dates (even excluding the documents signed on

March 3, 2016, on which Pruitt claims the handwritten dates (written 3-3-16) are not in his handwriting). *See, e.g.*, Def. Exh. 37 (signed by Pruitt on Jan. 26, 2016); Def. Exh. 38 (signed by Pruitt on Feb. 20 or 26, 2016); Pl. Exh. 12 (signed by Pruitt on March 16, 2016); *see also* 9/13 Tr. at 46:10-50:8 (Pruitt disputing that he wrote the date of March 3, 2016 on Pl. Exhs. 34, 35, 36, 39, 40, and 41). It is also likely that Pruitt met personally with Borcia more than once. *See* 9/13 Tr. at 129:18-130:6 (Borcia explaining that he first met with Pruitt in January 2016 and told him he would need to complete credit counseling before filing his bankruptcy petition). But the Defendants failed to prove definitively the number of times that Pruitt visited Borcia's office, and it is likely that the discrepancy between Pruitt and Borcia's accounts is attributable to one or both misremembering. In any case, it is clear they did not have many extended or substantive conversations, and never discussed the EEOC charges. In sum, then, none of the defense arguments are persuasive.

### III. Conclusion

For all the reasons discussed, the Defendants failed to prove by a preponderance of the evidence that Derell Pruitt intentionally concealed his EEOC charges in his March 16, 2017 bankruptcy filing. As a result, judicial estoppel does not bar Pruitt's claim. The litigation may move forward. At the November 8, 2018 status hearing, the Court will discuss the discovery plan going forward.

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: November 6, 2018

13